UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CINDY DESOTELLE,

    Plaintiff,

  v.                                Case No. 20-CV-1283

KILOLO KIJAKAZI,
Acting Commissioner of Social Security[1],

    Defendant.

## DECISION AND ORDER

Cindy Desotelle seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is affirmed and the case is dismissed.

## BACKGROUND

On March 16, 2018, Desotelle filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on her date of birth—April 11, 1968 (Tr. 319)—due to a myriad of physical health conditions including back and neck pain; bulging disks and degenerative disk disease; edema; and venous insufficiency (Tr. 275). Desotelle subsequently amended her alleged onset date to November 4, 2016. (Tr. 272.) Her date last insured is September 30, 2018. (Tr. 304.) Desotelle's application was denied initially and upon reconsideration. (Tr. 13.) Desotelle filed a request for a hearing, and a hearing was

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's appointment as acting commissioner. *See* Fed. R. Civ. P. 25(d).

held before an Administrative Law Judge ("ALJ") on August 13, 2019. (Tr. 42–71.) Desotelle testified at the hearing, as did Jacquelyn Wenkman, a vocational expert. (Tr. 42.)

In a written decision issued December 4, 2019, the ALJ found that Desotelle had the severe impairments of spondylosis, degenerative disc disease, radiculopathy, osteoarthritis, fibromyalgia, small fiber neuropathy, migraine headaches, depression, and anxiety. (Tr. 16.) The ALJ found that Desotelle did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 18–21.) The ALJ further found that Desotelle had the residual functional capacity ("RFC") to perform light work, with the following limitations: frequent (but not constant) hand use; occasional climbing of ramps and stairs, stooping, kneeling, crawling, balancing, and crouching; no climbing of ropes, ladders, or scaffolds; no work with heights or hazards; simple, routine, repetitive, and noncomplex work; and occasional change in work routine. (Tr. 21.)

While the ALJ found that Desotelle was unable to perform her past relevant work, she determined that given her age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that she could perform. (Tr. 31–32.) As such, the ALJ found that Desotelle was not disabled from November 4, 2016, through her date last insured, September 30, 2018. (Tr. 33.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Desotelle's request for review. (Tr. 1–6.)

## DISCUSSION

1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal

2

Case 1:20-cv-01283-NJ   Filed 02/10/22   Page 2 of 15   Document 24

standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to This Case*

Desotelle argues that the ALJ erred by: (1) failing to properly assess the opinions contained within the report of Desotelle's treating pain management physician, Dr. Michael Kolczynski; (2) failing to evaluate the case under Social Security Ruling 12-2p to determine if Desotelle's fibromyalgia merited a reduction in RFC; and (3) failing to ensure the job numbers used by the VE were based on reliable methods. I will address each argument in turn.

### 2.1 Evaluation of Dr. Kolczynski's Opinion

Dr. Michael Kolczynski is a pain management physician with Advanced Pain Management. He completed a Medical Source Statement on behalf of Desotelle on July 23, 2019. (Tr. 3355–58.) He opined that Desotelle could sit and stand for thirty minutes before needing to get up and could sit, stand, and walk for at least six hours total in an eight-hour workday. (Tr. 3356.) Dr. Kolczynski opined that Desotelle would need a job that permits shifting positions at will from sitting, standing, or walking and would need to walk around during an eight-hour workday, but did not opine as to how often or for how long she would need to walk. (*Id.*) He opined that Desotelle should be limited to occasional twisting. (Tr. 3357.) Dr. Kolczynski further opined that Desotelle would need to take unscheduled breaks every three hours for fifteen minutes because of pain, paresthesia, or numbness. (Tr. 3356.) Dr. Kolczynski declined to complete the portion of the form regarding the time Desotelle's symptoms would cause her to be off-task or to be absent from work because he "[does] not treat cognitive disability/depression symptoms." (Tr. 3358.)

The ALJ found Dr. Kolczynski's opinion "somewhat persuasive." (Tr. 30.) She credited the opinion to the extent that it "suggested that [Desotelle] could perform a modified level of light work" because the opinion was supported by the record evidence. (*Id.*) The ALJ rejected, however, Dr. Kolczynski's opinion that Desotelle should be limited to occasional twisting, finding that the treatment records from the relevant time period showed Desotelle typically had mildly reduced ranges of motion in the spine and negative straight leg raising and because the opinion was inconsistent with other medical opinions from the relevant period. (*Id.*) The ALJ further rejected Dr. Kolczynski's opinion as to Desotelle needing a sit/stand option and unscheduled breaks, finding these opinions unsupported by the objective

medical evidence, inconsistent with medical opinions from the relevant period, and primarily based on Desotelle's subjective statements. (*Id.*) The ALJ also questioned the persuasiveness of Dr. Kolczynski's opinion because it was offered after Desotelle's date last insured and "he primarily treated [Desotelle] after the date last insured." (*Id.*) Furthermore, the ALJ questioned why Dr. Kolczynski was able to offer an opinion regarding unscheduled breaks but could not offer an assessment about off-task behavior or absences from work. (*Id.*)

Desotelle challenges the ALJ's rejection of Dr. Kolczynski's opinions regarding the need for a sit/stand option, the need for unscheduled breaks, and the need for occasional twisting. (Pl.'s Br. at 8–13, Docket # 17.) First, Desotelle argues the ALJ committed reversible error by rejecting Dr. Kolczynski's opinion because it rested on subjective evidence. (*Id.* at 9.) She argues that the ALJ's rationale is "almost verbatim" the reason the ALJ rejected a medical expert's opinion in *Adaire v. Colvin*, 778 F.3d 685 (7th Cir. 2015), a case where the court found the ALJ erred. (*Id.* at 9–10.) This is an incomplete picture of both *Adaire* and the ALJ's opinion in this case. In *Adaire*, the court found an ALJ erred in rejecting a medical provider's opinion solely because "'they are not supported by medical findings but appear to depend almost exclusively on the claimant's subjective statements and subjective presentation rather than on objective medi[c]al findings" and also because this physician was 'apparently sympathetic' to the applicant." *Id.* at 688. The court found that the "first quoted passage repeats the fundamental error that 'subjective' statements are to be given zero weight and the second passage is radically incomplete, since the administrative law judge neither explained why she thought the physician was 'apparently sympathetic' nor why she thought that, if so, he must have given false evidence." *Id.*

5

The ALJ in this case did not make the same error as in *Adaire*. While the ALJ did note that Dr. Kolczynski's opinions regarding the sit/stand option and unscheduled breaks "appear to be based primarily on subjective reports," (Tr. 30), the ALJ clearly did not, in general, give Desotelle's subjective symptoms "zero weight." In fact, the ALJ gave Desotelle more restrictive work restrictions than those opined by the State Agency physicians to account for her subjective reports. (Tr. 28.) Furthermore, Dr. Kolczynski's reliance on Desotelle's subject complaints was only one reason, among several, that she gave for discounting this portion of his opinion. The ALJ found this portion of the opinion unsupported by the objective medical evidence and inconsistent with other medical opinions from the relevant period. (Tr. 30.) Thus, the ALJ did not err in this regard.

Desotelle next argues that the ALJ erred by cherry-picking the evidence, ignoring records supporting Dr. Kolczynski's opinion that she would need a sit/stand option and unscheduled breaks. (Pl.'s Br. at 10–11.) As to the sit/stand option, Desotelle points to several records stating that Desotelle's pain was greater with sitting than standing while simultaneously noting she had pain and numbness that radiated down her legs to her feet. (*Id.* at 10.) But the ALJ did not cherry-pick this evidence. She considered Desotelle's statements and the record evidence showing difficulties sitting and standing and pain radiating down her legs due to her impairments, including from her fibromyalgia. (Tr. 22.) The ALJ noted that Desotelle's pain management clinic documented abnormalities. (Tr. 23.) However, the ALJ also explained that despite these abnormalities, Desotelle continued to have reasonably good function during her physical examinations, and reported exercising every day by doing push-ups and using a stationary bike outside of the examination room observations. (Tr. 24.)

The ALJ also considered the record evidence showing Desotelle received good results from her pain management treatment, including radiofrequency ablation and trigger point injections. (*Id.*) This finding is supported by the record. In August 2018, Desotelle reported that despite continuing to get numbness and tingling in her bilateral lower extremities, she "is able to sit now" (Tr. 2765) due to her sacroiliac joint injections (Tr. 2980, 2982, 3057, 3060). In fact, Desotelle told her treating provider in November 2018 that the transforaminal epidural steroid injection she received in September continued to give her relief from the knee down almost two months later. (Tr. 3057.) Thus, the ALJ did not cherry-pick the record on this issue as Desotelle suggests.

Desotelle further argues that the ALJ impermissibly cherry-picked the record in dismissing Dr. Kolczynski's opinion regarding unscheduled breaks. (Pl.'s Br. at 11.) She argues that the record includes a diagnosis of chronic fatigue and low energy. (*Id.*) While Desotelle may have experienced chronic fatigue, she points to no evidence that this condition translates into a need for unscheduled breaks. In fact, Dr. Kolczynski's Medical Source Statement specifically asks what symptoms cause a need for unscheduled breaks and despite chronic fatigue being an available option, Dr. Kolczynski does not check it as a cause. (Tr. 3356.)

Desotelle further faults the ALJ for observing that it is unclear why Dr. Kolczynski was able to offer an opinion about unscheduled breaks but could not offer an assessment regarding off-task behavior or absences from work. (Pl.'s Br. at 11.) Desotelle rather incredibly argues that "[a]s a pain specialist, Dr. Kolczynski could discern when pain would become severe enough that a person would need to stop or rest. In contrast, off-task behavior would be a vocational consideration and not within the doctor's areas of specialty." (Pl.'s Reply Br.

at 8, Docket # 23.) Medical doctors, however, frequently complete Medical Source Statements opining as to their patient's physical ailments causing off-task behavior and/or absences, and plaintiffs frequently rely on these opinions in support of their alleged need for these limitations. It is indeed unclear how Dr. Kolczynski can opine that Desotelle's pain can cause her to need unscheduled breaks, but cannot opine as to the likelihood of being absent from work due to her pain. These are not significantly different questions. The ALJ did not err in according Dr. Kolczynski's opinion less weight for this reason.

Desotelle also argues the ALJ erred in rejecting Dr. Kolczynski's opinion regarding occasional twisting. (Pl.'s Br. at 11–12.) Specifically, she argues the ALJ impermissibly played doctor by acknowledging Desotelle exhibited limitations in her ranges of motion, but rejecting the limitations as significant because of negative straight leg testing. (*Id.* at 12.) Desotelle argues that straight leg raise tests are used to replicate pain in the low back, buttocks, or legs and do not address the ability to twist her back. (*Id.*) Desotelle misinterprets the ALJ's opinion. The ALJ does not use the negative straight leg testing to discount the limitations in her range of motion; rather, the ALJ found that Dr. Kolczynski's opinion regarding occasional twisting was unsupported by the record *because* she had "mildly reduced ranges of motion in the spine" *and* negative straight leg raising, as well as the opinion being inconsistent with the medical opinions from the relevant period. (Tr. 30.) This is not "playing doctor." It is reasonable for the ALJ to find the opinion inconsistent with the record when the record demonstrates good range of motion of the spine and negative straight leg raising, which, as Desotelle notes, addresses pain in the low back. Presumably whether one has low back pain impacts the ability to twist one's back.

8

Desotelle further argues that the ALJ failed to evaluate Dr. Kolczynski's opinion according to 20 C.F.R. § 404.1520c. While Desotelle generally argues that the ALJ failed to properly consider the supportability and consistency of Dr. Kolczynski's opinion, as well as his relationship to Desotelle and his specialty as a pain management doctor, (Pl.'s Br. at 14–16), Desotelle's argument is unfounded. The ALJ specifically considered all of these factors in assessing Dr. Kolczynski's opinion. (Tr. 29–30.)

Finally, Desotelle argues the ALJ's failure to credit Dr. Kolczynski's opinions regarding a sit/stand option and unscheduled breaks is not harmless error because it would erode the occupational base resulting in insignificant job numbers in the national economy she could perform. (Pl.'s Br. at 16–18.) However, because I find the ALJ did not err in assessing Dr. Kolczynski's opinion, the ALJ did not err in this regard either.

### 2.2 Evaluation of Case Under SSR 12-2p

Desotelle argues the ALJ erred in addressing her fibromyalgia under SSR 12-2p. (Pl.'s Br. at 18–21.) While the ALJ determined Desotelle's fibromyalgia was a medically determinable impairment (Tr. 16), she argues the ALJ "then failed to finish the rest of the analysis as required under SSR 12-2p." (Pl.'s Br. at 18.) SSR 12-2p, which addresses how the Administration evaluated fibromyalgia, states as follows:

> Once an MDI is established, we then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work. If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms. As we explain in SSR 96-7p, we will make a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning. We will

>  make every reasonable effort to obtain available information that could help us assess the credibility of the person's statements.

Desotelle asserts that beyond a single paragraph in the ALJ's RFC assessment, she "does not mention fibromyalgia again, nor provide any further analysis." (Pl.'s Br. at 19, citing Tr. 23.)

This assertion is simply inaccurate. In assessing the listings, the ALJ specifically addresses Desotelle's fibromyalgia, stating "[t]he undersigned has considered the claimant's fibromyalgia under the standards set forth in SSR 12-2p." (Tr. 19.) Furthermore, the ALJ states that "the medical evidence documented the claimant's . . . fibromyalgia . . . . The residual functional capacity accommodates the claimant's impairments by reducing her to a range of light work." (Tr. 27.) The ALJ noted that Desotelle's alleged symptoms stemmed from several physical impairments, including fibromyalgia. (Tr. 22.) Desotelle indicates that her fibromyalgia caused pain. (Pl's Br. at 20.) But the ALJ clearly considered Desotelle's allegations of disabling pain. SSR 12-2p provides that the ALJ will assess the consistency of one's allegations of disabling symptoms as explained in SSR 96-7p (which has since been superseded by SSR 16-3p). It is unclear what more the ALJ should have done to comply with SSR 12-2p. The ALJ did not err in this regard.

### 2.3 Vocational Expert Testimony Based Upon Reliable Method

Finally, Desotelle argues that the method used by the VE to arrive at her jobs estimates lacks foundation under *Chavez v. Berryhill*, 895 F.3d 962 (7th Cir. 2018) and thus the ALJ could not rely on the testimony to meet the Commissioner's burden of proof at Step Five. (Pl.'s Br. at 21–29.) At Step Five, an ALJ carries the burden in demonstrating with substantial evidence that jobs exist in significant number suitable for someone with the claimant's residual functional capacity. *Chavez*, 895 F.3d at 964. "In the context of job-number estimates, . . . the substantial evidence standard requires the ALJ to ensure the approximation is the

10

product of a reliable method." *Id.* at 968 (citing *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)). "Before accepting a VE's job number estimate, the ALJ, when confronted by a claimant's challenge, must require the VE to offer a reasoned and principled explanation." *Id.* at 970. This is not a formalistic exercise but a pragmatic requirement designed to ensure the reliability of the job numbers; the ALJ is not required to extensively question a VE if there are "sufficient indicia of reliability" as to the VE's testimony to support a conclusion about the applicant's ability to work. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019).

The sufficiency of a VE's testimony under *Chavez* is an oft-litigated issue. The crux of Desotelle's argument in this case, however, is whether Desotelle's failure to object and develop an argument about the VE's estimates at the hearing before the ALJ constitutes a waiver of the issue. In this case, Desotelle's counsel at the administrative level does nothing more than make a non-specific objection to the VE's testimony prior to the hearing (Tr. 350) and then asked the VE these two questions: "What is the source of the numbers that you've listed for these jobs?" and "what's the methodology that you use?" (Tr. 69). After the VE offers her explanation, counsel makes no objection nor does he ask any further questions. (Tr. 70.) The ALJ does not address the reliability of the VE's testimony in the decision (Tr. 32), presumably because no objection was made.

Desotelle argues that because the ALJ has a duty at step five to ensure the reliability of the vocational testimony under *Chavez*, a plaintiff does not need to do anything to raise the issue on appeal in the district court. (Pl.'s Reply Br. at 13–14.) In other words, Desotelle asserts that a represented claimant can stay completely silent as to the reliability of the VE's methodology during the administrative proceedings and then subsequently raise the issue before the district court. This argument, however, has already been made and rejected by the

11

Seventh Circuit. In *Coyier v. Saul*, the plaintiff's counsel asked the vocational expert about the source of his job numbers. When the vocational expert stated that he relied on Occupational Employment Quarterly, plaintiff's counsel stated that he objected to that "method." *Coyier v. Saul*, No. 19-CV-393-BBC, 2020 WL 9812040, at *3 (W.D. Wis. Apr. 2, 2020), *aff'd*, 860 F. App'x 426 (7th Cir. 2021). However, plaintiff's counsel did not explain specifically why he objected to the method as applied in the case, beyond referencing *Chavez*. *Id.* Like here, plaintiff argued that "under *Chavez*, it was the administrative law judge's burden to ask questions about the vocational expert's methodology once counsel raised an objection." *Id.* The district court, however, disagreed. It concluded that:

> [P]laintiff reads *Chavez* too broadly. In that case, there were obvious problems with the vocational expert's numbers, so the administrative law judge was on notice that he needed to question the vocational expert about his methodology. In this instance, plaintiff raised only a blanket objection to the vocational expert's reliance on Occupational Employment Quarterly. Plaintiff did not identify any specific issues that the administrative law judge should explore with the vocational expert. In addition, the administrative law judge gave plaintiff the opportunity to submit supplemental briefing after the hearing, but plaintiff did not do so.

*Id.* The Seventh Circuit affirmed the district court's conclusion. In addressing the very same argument Desotelle now raises in this case, the court stated:

> On appeal Coyier argues that at step five a claimant needs to object only to some aspect of the expert's method used to arrive at his job-number estimate to trigger the ALJ's duty to ensure the reliability of the VE's methodology. She claims that the ALJ erred by not scrutinizing the VE's methodology. However, Coyier waived any challenge to the VE's testimony by failing to ask any questions to reveal shortcomings in the job-number estimates or to submit a supplemental brief on the issue despite assuring the court prior to and at the hearing that he would do so. These omissions effectively conceded the reliability of the VE's job numbers.

*Coyier v. Saul*, 860 F. App'x 426, 427–28 (7th Cir. 2021). The court found that "Counsel's failure to avail himself of the opportunity to develop an argument about the expert's estimates is a waiver." *Id.* at 426.

Desotelle recognizes this issue (likely because the same counsel who represented Coyier also represents Desotelle) and now argues that the Supreme Court's decision in *Carr v. Saul*, 141 S. Ct. 1352 (2021) stands for the proposition that given the nature of Social Security disability hearings, claimants need not raise *any* issue before the ALJ to preserve the issue on appeal. (Pl.'s Reply Br. at 13.) Desotelle reads *Carr* much, much too broadly.

By way of background, Social Security plaintiffs were frequently raising the issue that the ALJ was not properly appointed under the Appointments Clause of the Constitution, *see* U.S. Const. art. II, § 2, cl. 2, while the Commissioner frequently countered that the plaintiff forfeited the argument by failing to raise it before the ALJ. Plaintiffs relied on the Supreme Court's 2000 case of *Sims v. Apfel*, 530 U.S. 103 (2000), in support of their argument, in which the Supreme Court held that claimants need not exhaust issues before the Appeals Council to enable judicial review. *Id.* at 107–12. Plaintiffs also cited the Supreme Court's 2018 decision in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018) in which the Court addressed whether ALJs of the Securities and Exchange Commission needed to be appointed by "the President, a court of law, or a head of department." *Id.* at 2051. The Court noted that a party must make a "timely challenge" to the ALJ's allegedly defective appointment, but the Court did not define precisely what this phrase meant. *Id.* at 2055. The Court did note that the claimant in *Lucia* had timely raised the Appointments Clause argument by asserting it before the SEC (i.e., at the administrative appeal level). *Id.*

13

After *Sims* and *Lucia*, district court across the country grappled with the issue of whether Social Security disability claimants are required to exhaust the Appointments Clause issue at the administrative level. The Supreme Court took up this issue in *Carr*. The Court stated:

> Even accepting that ALJ proceedings may be comparatively more adversarial than Appeals Council proceedings, the question nonetheless remains whether the ALJ proceedings at issue here were adversarial enough to support the "analogy to judicial proceedings" that undergirds judicially created issue-exhaustion requirements. *Sims*, 530 U.S., at 112, 120 S. Ct. 2080 (plurality opinion). *In the specific context* of petitioners' Appointments Clause challenges, two additional considerations tip the scales decidedly against imposing an issue-exhaustion requirement.

*Id.* at 1360 (emphasis added). The Court went on to say, however, that "[o]utside the context of Appointments Clause challenges, such as in the sphere of routine objections to individual benefits determinations, the scales might tip differently." *Id.* at 1360 n.5.

*Coyier* was decided subsequent to *Carr* and as such, the Seventh Circuit was presumably aware of the Court's decision. Furthermore, given *Carr*'s narrow holding, it does not supersede the Seventh Circuit's rejection of Desotelle's argument in this case. As such, the ALJ did not err in relying on the VE's numbers in this case.

## CONCLUSION

Desotelle alleges multiple errors in the ALJ's decision denying her disability claim. I find the decision is supported by substantial evidence and affirm. The case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 10th day of February, 2022.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge